**MABRY–WRIGHT, Appellee and Cross–Appellant,**

**v.**

**ZLOTNIK, Appellant and Cross–Appellee; Seraphim
& Angel Agency et al., Appellees.**

[Cite as *Mabry–Wright v. Zlotnik,* 165 Ohio App.3d 1, 2005-Ohio-5619.]

Court of Appeals of Ohio,
Third District, Allen County.

No. 1–04–76.

Decided Oct. 24, 2005.

Bryan A. Niemeyer, for appellee and cross-appellant.

Jeffrey L. Robinson, for appellant and cross-appellee.

T. Blain Brock II, for appellee.

SHAW, Judge.

{¶ 1} Defendant-appellant and cross-appellee, Donald E. Zlotnik, and plaintiff-appellee and cross-appellant, Gale Mabry–Wright, both appeal the August 11, 2004 judgment of the Allen County Court of Common Pleas.

{¶ 2} This dispute arises out of the termination of Mabry–Wright's employment with the Seraphim & Angel Agency ("Seraphim"), a nonprofit organization established as a foster-care agency in Lima, Ohio. Mabry–Wright had worked in the foster-care field for over 20 years, and Zlotnik contacted her about setting up a private, nonprofit foster-care agency in late 2000. Mabry–Wright agreed, and she signed an employment contract with Seraphim on December 8, 2000. The contract listed her title as Chief Operating Officer, indicated that her "salary" was to be 4.5 percent of the gross revenues of the agency, and specified that she could only be terminated "for cause shown."

{¶ 3} For the next several months Zlotnik and Mabry–Wright worked feverishly to set up the organization; Mabry–Wright in particular recruited foster parents, obtained all of the necessary licenses from the state of Ohio, and designed forms and files to help in the operation of the agency. However, because the agency was not generating revenues at this time, neither Zlotnik nor Mabry–Wright was receiving compensation for their work in setting up the agency. Mabry–Wright contends that Zlotnik promised her "merit pay" for her work in setting up the agency operations.

{¶ 4} In September 2001, Zlotnik drafted two "merit pay" contracts, one for himself and one for Mabry–Wright, which were presented to and approved by the agency's board of trustees. Those agreements indicated that Zlotnik and Mabry–Wright would receive $50,000 each in "merit pay" for their work in setting up the agency, to be paid out over time. The board recognized that Mabry–Wright had worked 90 to 100 hours a week for the previous 11 months and that her work had saved the agency $150,000 and would bring in an additional $250,000 in revenue.

{¶ 5} Shortly thereafter, however, the parties' relationship began to dissolve. Mabry–Wright began complaining to Zlotnik of various activities of his that she deemed unethical. Among her complaints were allegations that Zlotnik was allowing foster children to stay with him without having previous state approval, and she indicated that she was receiving complaints from both the county child and family services agencies and foster parents. Mabry–Wright was concerned about the effect that these allegations would have on Seraphim, and she called a special board meeting to discuss Zlotnik's behavior.

{¶ 6} However, instead of being given the opportunity to state her concerns about Zlotnik's behavior to the board, Mabry–Wright was presented with a letter signed by Nancy Bradford, the chairperson of the board, indicating that the

board was putting her on 30 days' probation for "numerous reported incidents of [her] failing to act in the best interest of our foster children and inability to conduct business in a professional manner in respect to inner office relationships." The letter also indicated that the board had given Zlotnik the sole authority to terminate her at the end of the 30–day period. Mabry–Wright alleges that Zlotnik was in control of the board and that he had orchestrated this probation; there is evidence in the record of various dismissals of board members prior to and at this meeting. There was no indication by the members of the board of what the "numerous reported incidents" referred to, and no explanation was given to Mabry–Wright. She filed a formal grievance, requesting that she be informed of the allegations against her. The board failed to respond, and Mabry–Wright was never given the opportunity to respond to the allegations against her.

{¶ 7} After Mabry–Wright filed her grievance, Zlotnik wrote a resignation letter for her and told her to sign it. The letter contained a provision stipulating that the remaining portion of her "merit pay" award—$1,000 of which had previously been paid—would be paid out in several increments: $5,000 within 15 days of her resignation, $2,000 per month from January 2002 to November 2002, and a $22,000 payment made in December 2002. Mabry–Wright refused to sign the letter of resignation.

{¶ 8} On November 14, 2001, the end of the 30–day probation period, Zlotnik presented the board with a letter indicating that he strongly recommended that Mabry–Wright's annual contract not be renewed. That same day Mabry–Wright presented Zlotnik with a letter of resignation, effective two weeks from that date. The next day Zlotnik informed Mabry–Wright in writing that she was suspended without pay. Then, on November 18, 2001, the board sent a letter to Mabry–Wright revoking any further payments under her merit-pay award, of which she had been paid only $1,000.

{¶ 9} Mabry–Wright filed suit in the Allen County Court of Common Pleas against Zlotnik, Seraphim, and members of the board of trustees asserting various claims of tortious conduct and breach of contract. The jury returned verdicts in favor of Mabry–Wright as follows: $49,000 for breach of her merit-pay contract against Zlotnik and Seraphim, $100,000 for breach of her employment contract against the agency, $600 and $300 respectively against board members Nancy Bradford and Andria Wertenberger for liability as board members, and $500,000 punitive damages against Zlotnik. The jury also returned verdicts in her favor, but did not award actual damages, on her claims against Zlotnik for intentional infliction of emotional distress, intentional interference with contract, and interference with an employment relationship.

{¶ 10} Zlotnik filed a motion for judgment notwithstanding the verdict asserting two issues: (1) the jury interrogatories were inconsistent with the general verdict and (2) the jury's award of punitive damages was improper in the absence of proof of actual damages. The trial court denied the motion on the first issue and granted the motion on the punitive damages issue. Zlotnik now appeals the trial court judgment, asserting the following two assignments of error:

> The court erred when it refused to grant appellant Zlotnik's motion for [directed verdict] at the close of plaintiff/appellee's case.

> The judge erred when he found that the interrogatories were consistent with the general verdict.

Additionally, Mabry–Wright filed a cross-appeal, asserting the following assignment of error:

> The trial court erred when it refused to award [Mabry–Wright] $500,000 in punitive damages awarded to her by the jury where the jury awarded Mabry–Wright damages on her breach of contract claim, which served as the basis for the punitive damages because the breach was accompanied by connected, but independent tortious conduct of [Zlotnik].

## I

{¶ 11} Zlotnik first argues that the trial court erred in not granting the motion for directed verdict he brought at the close of the arguments. "The test for granting a directed verdict * * * is whether the movant is entitled to judgment as a matter of law when the evidence is construed most strongly in favor of the non-movant." *Sanek v. Duracote Corp.* (1989), 43 Ohio St.3d 169, 172, 539 N.E.2d 1114. If there is some probative evidence that, if believed, would permit reasonable minds to come to opposing conclusions, the motion must be overturned. Id.; see also *Pariseau v. Wedge Products, Inc.* (1988), 36 Ohio St.3d 124, 127, 522 N.E.2d 511.

{¶ 12} Zlotnik's essential argument is that there was no evidence presented that would establish that a "merit pay" contract existed between himself and Mabry–Wright. He argues that any agreement she had was with the agency and that he was not personally liable on the alleged agreement.

{¶ 13} We find Zlotnik's arguments unpersuasive; Mabry–Wright presented sufficient evidence of an enforceable contract to defeat a motion for directed verdict. She testified that Zlotnik promised her in the beginning, when he approached her with the idea of starting a private foster-care agency, that she would be paid for her work in setting up the agency. She also testified that he promised that money would come from the general revenues of the agency when revenue began coming in. There was also evidence presented that Zlotnik made

these promises, in part, to obtain her services since she had over 20 years of experience in the industry and had many of the necessary contacts with the state agencies and prospective foster parents. Additionally, evidence was presented to show that Mabry–Wright relied on these promises and did, in fact, perform numerous services without compensation while Seraphim was in its infancy.

{¶ 14} Moreover, evidence was presented to show that Zlotnik alone had the ability to control the board of trustees and the award of bonuses from the agency. The record indicates that he drafted the merit-pay contract signed by the board and that he had the power to orchestrate the removal of members of the board. Additionally, there is documentary evidence tending to show that that he breached his promises to Mabry–Wright by having the board rescind the merit-pay award.

{¶ 15} All of this evidence, if believed, would tend to demonstrate that Zlotnik had made a promise to pay Mabry–Wright for her services, that she reasonably relied on that promise, and that there was a breach of that promise. Accordingly, there is sufficient evidence presented, considered in a light most favorable to Mabry–Wright, that establishes the existence of an enforceable contract and that Zlotnik breached his obligations under that contract. Based on the foregoing, Zlotnik's first assignment of error is overruled.

{¶ 16} In his second assignment of error, Zlotnik argues that the trial court erred in finding that the jury interrogatories were consistent with the general verdict. However, Zlotnik waived his objections to any inconsistency between the jury interrogatories and the general verdict because he failed to object prior to the discharge of the jury. *Haehnlein v. Henry* (1987), 41 Ohio App.3d 233, 234, 535 N.E.2d 343; *Roeder v. Coleman* (Apr. 26, 1994), 10th Dist. No. 93AP–889, 1994 WL 158911; *Santill v. Gen. Elec. Co.* (Apr. 4, 1991), 8th Dist. No. 58377, 1991 WL 45559. By failing to object before the jury is discharged, the party asserting the inconsistency fails to provide an opportunity for the court to allow the jury to remedy any discrepancy. As the court found in *Haehnlein,* allowing a party to object after the jury has been discharged would invite jury shopping. Accordingly, Zlotnik's second assignment of error is overruled.

## II

{¶ 17} In her cross-appeal, Mabry–Wright argues that the trial court erred in granting Zlotnik's motion for judgment notwithstanding the verdict in part and vacating the jury award of punitive damages. The trial court held that punitive damages were not available in this case because of the jury's determination that no actual damages had been proven on Mabry–Wright's tort claims against Zlotnik.

■■ {¶ 18} As a general rule, punitive damages are not recoverable in the absence of actual or compensatory damages. *Malone v. Courtyard by Marriott Ltd. Partnership* (1996), 74 Ohio St.3d 440, 447, 659 N.E.2d 1242, citing *Bishop v. Grdina* (1985), 20 Ohio St.3d 26, 27, 20 OBR 213, 485 N.E.2d 704. Additionally, under Ohio law punitive damages are generally not recoverable in an action for breach of contract. *Digital & Analog Design Corp. v. N. Supply Co.* (1989), 44 Ohio St.3d 36, 45–46, 540 N.E.2d 1358. Thus, since the jury only awarded Mabry–Wright actual damages against Zlotnik on the claim for breach of the merit-pay contract and determined that there were no actual damages resulting from Zlotnik's tortious conduct, under the general rules punitive damages would not be available in this case.

■ {¶ 19} Mabry–Wright argues, however, that this case falls under an exception to the general rule prohibiting recovery of punitive damages in claims for breach of contract. Under that exception, punitive damages are available "where the breach of contract is accompanied by a connected, but independent tort involving fraud, malice or oppression." *Goldfarb v. Robb Report, Inc.* (1995), 101 Ohio App.3d 134, 140, 655 N.E.2d 211. Thus, in order to recover punitive damages pursuant to this exception, Mabry–Wright must prove (1) that Zlotnik breached a contract with her, (2) that he committed a connected tort independently of that breach, and (3) that his tortious conduct was fraudulent, malicious, or oppressive in nature. Id. She argues that the award of actual damages for the breach of the merit-pay contract was sufficient grounds to allow the jury to award punitive damages in this case because she affirmatively established, based on the jury's findings, a connected, independent tort of interference with employment relationship involving malicious conduct.

■ {¶ 20} We find that the exception is inapplicable to this case because the jury specifically concluded that Mabry–Wright had not proven actual damages on her tort claims. The exception to the general rule prohibiting recovery of punitive damages in breach-of-contract claims exists to deter fraudulent and malicious conduct in connection with a breach of contract. See *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 651, 635 N.E.2d 331 ("The purpose of punitive damages is not to compensate a plaintiff, but to punish and deter certain conduct"). The exception permits punitive damages not for the breach of contract, but for the tortious conduct. *R & H Trucking, Inc. v. Occidental Fire & Cas. Co. of N. Carolina* (1981), 2 Ohio App.3d 269, 272, 2 OBR 298, 441 N.E.2d 816; *Sweet v. Grange Mut. Cas. Co.* (1975), 50 Ohio App.2d 401, 407, 4 O.O.3d 399, 364 N.E.2d 38. Thus, punitive damages are available only " 'where the essentials of an award of such damages are otherwise present.' " Id. at 407, 4 O.O.3d 399, 364 N.E.2d 38, quoting 25 Corpus Juris Secundum (1975) 1128, Damages, Section 120.

{¶ 21} In the instant case, such essentials are not present because of the general rule that punitive damages are not available in tort claims in the absence of proof of actual damages. Mabry–Wright pleaded and proved malicious tortious conduct, but the jury determined that there were no actual damages stemming from that conduct. This finding precludes recovery of punitive damages *based on that tortious conduct* under any theory. Accordingly, recovery under the exception is not available when the connected, independent tortious conduct cannot itself be the basis for an award of punitive damages.

{¶ 22} Mabry–Wright cites *Moskovitz* for the proposition that the malicious conduct need not independently cause compensable harm before punitive damages become available. We find that case distinguishable. In *Moskovitz*, claims were brought against the defendants for medical malpractice, wrongful death, and for malicious conduct in destroying medical records in an effort to hide wrongdoing. The trial court awarded actual damages for medical malpractice and wrongful death and awarded punitive damages for the destruction of medical records even though no actual damages were proven on that claim. The court of appeals overturned the award of punitive damages because there was no compensable harm resulting from the destruction of records. The Supreme Court of Ohio reversed, finding that the plaintiff need not prove an independent compensable harm in order to recover for the malicious tortious conduct. Id., 69 Ohio St.3d 638, 635 N.E.2d 331.

{¶ 23} *Moskovitz* is inapplicable to this case because in that case there was underlying tortious conduct for which plaintiff had recovered actual damages. The Supreme Court specifically held that punitive damages were available when compensatory damages were awarded for medical malpractice and there was an additional showing of "[a]n intentional alteration, falsification or destruction of medical records [in order to] avoid liability for * * * medical negligence." Id. at 653, 635 N.E.2d 331. Thus, punitive damages were only available in that case for malicious conduct done in an attempt to avoid tort liability. Those circumstances are not present in the case sub judice, and therefore we find that case inapplicable.

{¶ 24} Accordingly, we find that the jury's determination that no actual damages resulted from Zlotnik's tortious conduct precludes an award of punitive damages for that same conduct. Mabry–Wright's assignment of error is overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

CUPP, P.J., and BRYANT, J., concur.