[Cite as *Sivit v. Village Green of Beachwood, L.P.*, 2013-Ohio-103.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 98401

---

# CARLOS SIVIT, ET AL.

### PLAINTIFFS-APPELLEES

vs.

# VILLAGE GREEN OF BEACHWOOD, L.P., ET AL.

### DEFENDANTS-APPELLANTS

---

### JUDGMENT:
### AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CV-671776, CV-674795, CV-701195,
CV-706333, and CV-707545

**BEFORE:**  Blackmon, P.J., Celebrezze, J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:**  January 17, 2013

**ATTORNEYS FOR APPELLANTS**

Marvin L. Karp
Lawrence D. Pollack
Ulmer & Berne LLP
Skylight Office Tower, Suite 1100
1660 West 2nd Street
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEES**

**For Carlos Sivit, et al.**

Joseph W. Diemert, Jr.
Thomas M. Hanculak
Daniel A. Powell
Mark V. Guidetti
Joseph W. Diemert, Jr. & Associates Co., LPA.
1360 S.O.M. Center Road
Cleveland, Ohio 44124

**For Allstate Insurance Co., et al.**

James A. Marx
Shapero & Green, LLC
Signature Square II, Suite 220
25101 Chagrin Blvd.
Beachwood, Ohio 44122

**For Nationwide Mutual Insurance Co., et al.**

Joseph A. Ferrante
2 Summit Park Drive, Suite 540
Independence, Ohio 44131

**For Safeco Insurance Co., of America, et al.**

Jeffrey A. Kaleda

Markesbery & Richardson Co., LPA
2368 Victory Parkway, Suite 200
P.O. Box 6491
Cincinnati, Ohio 45206

**For State Farm Fire & Casualty Co., et al.**

Richard H. Blake
Robert James
Bricker & Eckler, LLP
1001 Lakeside Avenue, Suite 1350
Cleveland, Ohio 44114

PATRICIA ANN BLACKMON, P.J.:

{¶1}   Appellants, Village Green of Beachwood, L.P. ("Village Green") and Forest City Residential Management, Inc. ("FCRM"), appeal the trial court's denial of their motion for directed verdict and assign 11 errors for our review.[1]   Having reviewed the record and pertinent law, we affirm the trial court's decision.   The apposite facts follow.

{¶2}   In the early morning of October 23, 2007, a fire erupted and quickly engulfed Building 8 of the Verdant at Village Green apartment complex, located at 26800 Amhearst Circle in Beachwood, Ohio.   After several hours, the Beachwood Fire Department, with mutual aid from surrounding communities, extinguished the fire.   All the residents escaped unharmed, but there was considerable property damage, and Building 8 was ultimately demolished.

{¶3}   Immediately following the fire, the Beachwood Fire and Police Departments, the State Fire Marshall's office, as well as professional fire investigators began investigating the cause of the fire.   Collectively, they evaluated the scene, took photographs, and spoke to witnesses and residents to ascertain the cause of the fire.

{¶4}   The occupants of Suite 310 indicated that they smelled a camp-like odor around 1:00 p.m. the day before and notified the maintenance department of the smell of smoke.   Around 9:00 p.m., Beachwood fire and police responded to Suite 310, but could not locate the source of the odor.    The occupant of Suite 210 indicated that she smelled a barbeque or campfire odor around 8:30 p.m. the night before the fire.   The occupant of

[1]*See* appendix.

Suite 110 indicated that her lights were flickering on and off around 10:30 p.m. the night before the fire and at approximately 11:15 p.m., she smelled the odor of burning tar. Most of the other residents of Building 8 reported unresolved electrical and maintenance issues with the building.

{¶5} As part of the investigation, the Beachwood Fire Department retained Ralph Dolence ("Dolence"), a fire investigator and electrical expert, to assist in their investigation. Dolence, who had previously been retained to investigate a fire in 2004 that destroyed Building 3 of the same apartment complex, ruled out arson or accelerants as causes of the fire, which was supported by the other investigators.

{¶6} Following his investigation, Dolence determined that the fire originated in the interstitial space between the floor and ceiling space of Units 210 and 310, and that there was no fire internally in Units 110, 210, and 310. Dolence concluded that the fire was caused by faulty electrical wiring contaminated by water leaks within the building. Dolence's conclusion was in keeping with that of the Beachwood Fire Department.

{¶7} On September 26, 2008, Carlos Sivit ("Sivit"), along with ten other residents who lost most of their personal belongings and were displaced when Building 8 was demolished, filed a complaint against several entities including Village Green and FCRM, the managers of the developers and owners of the apartment complex, alleging that negligence or gross negligent construction and maintenance of the building caused the fire.

**{¶8}** Sivit also brought a cause of action for breach of lease alleging that Village Green had failed to maintain Building 8 and the mechanical devices therein in a clean, safe, and working condition. Sivit further alleged that throughout the course of the lease, Village Green and FCRM failed to perform building repairs within a reasonable time that were of an emergency in nature, including electrical faults and other fire hazards.

**{¶9}** On December 16, 2011, after a two-week trial, the jury rendered a verdict in favor of Sivit and awarded compensatory damages of $582,328. The jury also awarded punitive damages in the amount of $2,000,000. In addition, the trial court awarded attorney fees in the amount of $1,040,000 to Sivit's attorneys. Village Green and FCRM now appeal.

## Directed Verdict, Negligent Maintenance, and Negligent Construction

**{¶10}** We will address assigned errors 1 and 5 together because they both contend the trial court erred when it denied the motion for directed verdict on Sivit's claims of negligent maintenance and construction.

**{¶11}** The standard of appellate review on a motion for directed verdict is de novo. *Loreta v. Allstate Ins. Co.,* 8th Dist. No. 97921, 2012-Ohio-3375, citing *Grau v. Kleinschmidt*, 31 Ohio St.3d 84, 90, 509 N.E.2d 399 (1987). This court is to construe the evidence presented most strongly in favor of the nonmoving party and, after so doing, determine whether reasonable minds could only reach a conclusion that is against the nonmoving party. *Titanium Indus. v. S.E.A. Inc.*, 118 Ohio App.3d 39, 691 N.E.2d 1087

(7th Dist.1997), citing *Byrley v. Nationwide Ins. Co.*, 94 Ohio App.3d 1, 640 N.E.2d 187 (6th Dist.1993), *appeal not accepted*, 70 Ohio St.3d 1441, 638 N.E.2d 1044 (1994).

{¶12}   An appellate court does not weigh the evidence or test the credibility of the witnesses. *Id.*   In considering the motion, this court assumes the truth of the evidence supporting the facts essential to the claim of the party against whom the motion is directed, and gives to that party the benefit of all reasonable inferences from that evidence.   *Becker v. Lake Cty. Mem. Hosp. W.*, 53 Ohio St.3d 202, 206, 560 N.E.2d 165 (1990), citing *Ruta v. Breckenridge-Remy Co.*, 69 Ohio St.2d 66, 68, 430 N.E.2d 935 (1982).

{¶13} To prevail in a negligence action, the plaintiff must show (1) the existence of a duty, (2) a breach of that duty, and (3) an injury proximately resulting from the breach. *Mann v. Northgate Investors L.L.C.*, 10th Dist. No. 11AP-684, 2012-Ohio-2871, citing *Robinson v. Bates*, 112 Ohio St.3d 17, 2006-Ohio-6362, 857 N.E.2d 1195, ¶ 21.   At common law, a landlord was charged with a general duty to exercise reasonable care to keep the premises retained in his control for the common use of his tenants in a reasonably safe condition.   *Mullins v. Grosz*, 10th Dist. No. 10AP-23, 2010-Ohio-3844, ¶ 23.

{¶14} In 1974, the Ohio General Assembly modified the common law regarding landlords and tenants when it "enacted R.C. 5321.01 et seq., the Landlord-Tenant Act, in an attempt to clarify and broaden tenants' rights as derived from common law." *Mullins* at ¶ 23.

{¶15}   In *Shroades v. Rental Homes, Inc.,* 68 Ohio St.2d 20, 427 N.E.2d 774 (1981), the Supreme Court of Ohio held that a landlord is liable for injuries sustained on

leased premises that are proximately caused by the landlord's failure to fulfill the duties imposed by R.C. 5321.04(A), which provides, in pertinent part:

**(A) A landlord who is a party to a rental agreement shall do all of the following:**

**(1) Comply with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety;**

**(2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition;**

**\* \* \***

**(4) Maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, and air conditioning fixtures and appliances, and elevators, supplied or required to be supplied by him[.]**

{¶16} A landlord's violation of the duties imposed by Ohio's Landlord-Tenant Act constitutes negligence per se. *Allstate Ins. Co. v. Henry*, 12th Dist. No. CA2006-07-168, 2007-Ohio-2556, ¶ 9, citing *Sikora v. Wenzel*, 88 Ohio St.3d 493, 2000-Ohio-406, 727 N.E.2d 1277, syllabus. With negligence per se, proof of a landlord's violation of the statute dispenses with the plaintiff's burden to establish the existence of a duty and the breach of that duty. *Henry* at ¶10; *Chambers v. St. Mary's School,* 82 Ohio St.3d at 563.

{¶17} However, negligence per se does not equate to liability per se, as it does not dispense with the plaintiff's obligation to prove the landlord's breach was the proximate cause of the injury complained of, nor does it obviate the plaintiff's obligation to prove the landlord received actual or constructive notice of the condition causing the statutory violation. *Packman v. Barton*, 12th Dist. No. CA2009-03-009, 2009-Ohio-5282, citing

*Turner v. Tiemeyer*, 12th Dist. No. CA95-08-053, 1996 Ohio App. LEXIS 428, *3 (Feb. 12, 1996); *Henry* at ¶ 11. In turn, landlords will be excused from liability where they "neither knew nor should have known of the factual circumstances that caused the violation." *Mounts v. Ravotti*, 7th Dist. No. 07 MA 182, 2008-Ohio-5045, ¶ 30, quoting *Sikora*, 88 Ohio St.3d at 498.

{¶18} In the instant case, the record reveals that Village Green and FCRM's collective violation of the duties imposed by Ohio's Landlord-Tenant Act proximately caused the fire. As it relates to the claim of negligent maintenance, numerous tenants gave statements regarding various maintenance issues with Building 8 to the on-scene investigators at the time of the fire. Several of these tenants testified at trial, but in the interest of brevity, the recurrent element can be summed up in the testimony of Detective Don Breckenridge of the Beachwood Police Department. Detective Breckenridge investigated the 2004 fire in Building 3 as well as the 2007 Fire in Building 8. Detective Breckenridge testified in pertinent part about the 2004 and 2007 fires, as follows:

> **Q.** **Without repeating exactly what those tenants and witnesses said to you, was there a consensus or general theme behind the complaints or statements that you received?**
>
> **A.** **Yes. It seemed to be a consensus of opinion that most problems with electrical surges; lights flashing off and on, lights dimming. There were reports of people who could hear water running between the walls, mildew, light bulbs flashing real bright then dim, and then finally going out; numerous fire alarms, false fire alarms.**
>
> **Q.** **Okay. Detective, did you then have an opportunity, in 2007, to investigate the fire that took place in the same location but a different building?**

**A.** Yes.

\* \* \*

**Q.** The general responses or theme was what, Detective?

**A.** Power surges, lights dimming, lights flashing off and on, light bulbs blowing out, mildew, water in the walls, elevator not working.

**Q.** Okay. And how did that compare with those that you had investigated and found out in your investigation in the 2004 fire?

**A.** They seemed very much the same to me. Tr. 1305-1307.

{¶19} In addition to the tenants' maintenance concerns, as illuminated in Detective Breckenridge's testimony above, Michael Farlow, Village Green's former maintenance supervisor, who moved out of Building 8 shortly before the fire, testified in conformity with the tenants, as follows:

**Q.** \* \* \* Okay. At some time after you moved out, did the police ever contact you about the fire in the building?

**A.** Yes, they did.

**Q.** Okay. What was the purpose of their contacting you?

**A.** They wanted to know if I knew any information prior --- or about the building since I was the most recent Maintenance Supervisor, because I don't think at the time they filled my position yet.

**Q.** Okay. What was your reaction to the news of the fire?

**A.** To be frank, I wasn't surprised.

\* \* \*

**Q.** What did you tell the police officers at that time?

A. Well, that was like four years ago but I --- like I said, I told them I wasn't surprised. I think he may have asked me why I said that, and I think I just said because there was a lot of water problems in that building, also with water and electrical problems downstairs in the parking garage.

Q. Okay. Did you mention anything to them about your characterization of the building as a whole?

* * *

A. I would say, to the best of my knowledge --- like I said, I don't really recall the whole report, but I probably said it was waterlogged.

Q. And what did you mean by that?

A. With the siding especially and the roof problems with the vents and everything, there was a lot of water inside the walls; a lot of water infiltrating the building, especially a lot in the basement so ---

Q. And so you could see visible water infiltrating inside the apartment building?

A. Oh, yes, absolutely. Tr. 416-418.

{¶20} Further, the record reveals that sometime in 2006, Forest City Enterprise ("FC") acquired a full interest in Village Green. Prior to the purchase, Rod Brannon, FC's Vice President of Engineering, conducted a due diligence inspection of the property. At trial, Brannon testified that the buildings needed a lot of work due to the lack of preventative maintenance and because of deferred maintenance. (Tr. 248.) Brannon testified that Building 8 needed a lot of work, admitted that he was aware of the 2004 fire

in Building 3, but indicated that the purpose of his due diligence inspection was to justify a low bid offer for the property.   Tr. 253-254.

{¶21}   Subsequent to Brannon's inspection, the city of Beachwood housing department inspected the properties and specifically noted numerous violations in Building 8.   The city inspector notified Village Green in writing of the numerous violations and advised them to refrain from renting the property until the violations were corrected, reinspected, and certified by the city.   However, the record reveals that Village Green continued to rent out units in Building 8 despite not addressing the city's concerns.

{¶22}   Pivotally, Dolence, who as previously noted, investigated the 2004 fire in Building 3, was present at the site during the fire, testified that the 2007 fire in Building 8 was caused by faulty electrical wiring contaminated by water leaks within the building. Dolence specifically stated:

> **Water is very significant in a fire.   It was the cause of this fire.   If you have an electrical issue — we talked about resistance heating, we talked about arc tracking.   Many of them are stimulated arc tracking; specifically by water and moisture.   You could have an electrical fault if — you know, it can sit there forever or a code violation.   If something doesn't stimulate it or a catalyst to induce it, nothing is going to happen.   That's my opinion.   And it's always been my opinion that it's been the water ingress contributed with or linked with poor wiring.   That was the cause of this fire and the physical evidence in my opinion showed that.** Tr. 1187-1188.

{¶23} Here, the testimony adduced at trial, through previous tenants and previous employees of Village Green and FCRM, as well as the city of Beachwood's Housing Inspection Department, along with fire investigator Dolence, clearly established that Building 8 was in a general state of disrepair.   Said testimonies also established that

electrical and water infiltration issues noted as the cause of the fire in Building 8 paralleled the findings of the 2004 fire in Building 3.

{¶24} Of prime importance, said testimonies established that Village Green and FCRM knew or should have known of the complained-of conditions that caused the fire in Building 8. As such, Village Green and FCRM cannot be excused from liability under the duties imposed by R.C. 5321.04(A)(1) or 5321.04(A)(2). Consequently, the trial court properly denied Village Green and FCRM's motion for directed verdict on Sivit's negligent maintenance claim.

{¶25} We now turn our attention to Village Green's contention that Sivit's negligent construction claim should not have survived a motion for directed verdict.

{¶26} At trial, Dolence testified at length about his investigation, including presenting a slide presentation that showed numerous pictures of Building 8. Dolence testified that during his investigation, he observed numerous national electrical code violations and shoddy workmanship. Dolence stated that he observed numerous examples of unsecured feeder cables, wires double stapled, and wires pulled up against metal gusset plates with insulation damage. Ultimately, Dolence pinpointed the root source of the fire to three wires under the living room floor of Unit 310. We conclude, Sivit established that Building 8 was negligently constructed.

{¶27} However, Village Green claims that liability should not have been attached because it hired independent contractors for the construction of the property. We are not persuaded.

**{¶28}** A landlord may not shift the responsibility to an independent contractor of complying with laws designed for the physical safety of others. *Shump v. First Continental-Robinwood Assn.*, 71 Ohio St.3d 414, 1994-Ohio-427, 644 N.E.2d 29. Such duties are not delegable. *Id.*, citing Restatement of the Law 2d, Property, Section 19.1. The record indicates that throughout the construction of the property, Village Green was the developer and maintained oversight on the project. We have previously held that a developer of a condominium project is liable for construction defects, notwithstanding the fact a general contractor was hired to perform the construction work. *See Point E. Condo. Owners' Assn. v. Cedar House Assn. Co.*, 104 Ohio App.3d 704, 663 N.E.2d 343 (8th Dist. 1994). Accordingly, we overrule the first and fifth assigned error.

**{¶29}** Based on the foregoing, the trial court properly denied Village Green's motion for directed verdict on Sivit's negligent construction claim. Accordingly, we overrule the first and fifth assigned errors.

### Manifest Weight of Evidence and Negligent Maintenance

**{¶30}** In the second assigned error, Village Green and FCRM argue the judgment on Sivit's negligent maintenance claim was against the manifest weight of the evidence.

**{¶31}** In *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, the Ohio Supreme Court recently clarified the standard of review appellate courts should apply when assessing the manifest weight of the evidence in a civil case. The Ohio Supreme Court held the standard of review for manifest weight of the evidence for

criminal cases stated in *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, is also applicable in civil cases. *Eastley* at ¶ 17-19.

{¶32} A reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine "whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Eastley* at ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001); *see also Sheet Metal Workers Local Union No. 33 v. Sutton*, 5th Dist No. 2011CA00262, 2012-Ohio-3549, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶33} In the instant case, as discussed in detail in the first and fifth assigned error, we found the evidence presented at trial through the testimony of Building 8's tenants, former employees of Village Green and FCRM respectively, Detective Breckenridge, and Dolence, clearly established that the property was negligently maintained. In the face of the overwhelming evidence in the record regarding the state of disrepair of Building 8, we cannot conclude that the jury lost its way and created a manifest miscarriage of justice. Accordingly, we overrule the second assigned error.

### Admission of Evidence and 2004 Fire

{¶34} In the third assigned error, Village Green and FCRM argue the trial court erred by admitting evidence of the 2004 fire in Building 3.

**{¶35}** The admission or exclusion of evidence is a matter within the trial court's discretion and will be reversed only for an abuse of that discretion. *Robertson v. Mt. Carmel E. Hosp.*, 10th Dist. No. 09AP-931, 2011-Ohio-2043, ¶ 27, citing *Valentine v. Conrad*, 110 Ohio St.3d 42, 2006-Ohio-3561, 850 N.E.2d 683 ¶ 9. An abuse of discretion requires more than an error of law or judgment; it connotes that the court's attitude is unreasonable, unconscionable, or arbitrary. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). For evidence to be admissible, it must be relevant. *Pazin v. Pazin*, 7th Dist. No. 07-CO-43, 2008-Ohio-6975; Evid.R. 402. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence in the determination of an action more or less probable. *Id.*; Evid.R. 401.

**{¶36}** In the instant case, as previously discussed, the cause of the 2004 fire in Building 3 was identical to the cause of the 2007 fire in Building 8. Detective Breckenridge, who investigated both fires, testified that the tenants' complaints regarding electrical and water problems were substantially the same. Dolence testified that the same factors caused both fires. Specifically, after the 2004 fire in Building 3, Dolence concluded that it originated in the interstitial space between the floor and ceiling of units 311 and 211. Likewise, and as previously stated, Dolence concluded that the 2007 fire in Building 8 originated in the interstitial space between the floor and ceiling of units 210 and 310.

**{¶37}** Here, introduction of evidence relating to the fire in 2004 was relevant to the claims of negligent construction and maintenance. In addition, it was relevant to show

that Village Green and FCRM were on notice of the conditions leading to the 2007 fire in Building 8. As such, the trial court did not abuse its discretion in admitting evidence of the 2004 fire in Building 3. Accordingly, we overrule the third assigned error.

## Jury Instruction, Negligent Maintenance, and Negligent Construction

{¶38} We will address assigned errors 4 and 6 together because they both contend the trial court erroneously instructed the jury on Sivit's negligent maintenance and construction claims.

{¶39} When considering the appropriateness of a jury instruction, or when a specific jury instruction is in dispute, a reviewing court must examine the instructions as a whole. *Withers v. Mercy Hosp. of Fairfield*, 12th Dist. No. CA2010-02-033, 2010-Ohio-6431, citing *Enderle v. Zettler*, 12th Dist. No. CA2005-11-484, 2006-Ohio-4326; *Coyne v. Stapleton*, 12th Dist. No. CA2006-10-080, 2007-Ohio-6170.

{¶40} Taken in their entirety, when the instructions fairly and correctly state the law applicable to the evidence presented at trial, reversible error will not be found merely on the possibility that the jury may have been misled. *Wozniak v. Wozniak*, 90 Ohio App.3d 400, 410, 629 N.E.2d 500 (9th Dist.1993), citing *Ohio Farmers' Ins. Co. v. Cochran*, 104 Ohio St. 427, 135 N.E. 537 (1922).

{¶41} Moreover, misstatements and ambiguity in a portion of the instructions will not constitute reversible error unless the instructions are so misleading that they prejudicially affect a substantial right of the complaining party. *Wozniak* at 410. *Silver v.*

*Jewish Home of Cincinnati*, 190 Ohio App.3d 549, 2010-Ohio-5314, 943 N.E.2d 577 (12th Dist.).

{¶42} In the instant case, the evidence presented at trial on the issues of negligent maintenance and construction was exhaustive.  The record indicates that the trial court's jury instructions comported with the evidence presented.  As such, we find no merit to Village Green and FCRM's contention.  Accordingly, we overrule the fourth and sixth assigned errors.

## Damages

{¶43} In the seventh assigned error, Village Green and FCRM argue the trial court erred when it allowed seven plaintiffs to each recover an additional $5,000 in damages that had not been previously included on the property inventory.

{¶44} We first note that the assessment of damages is a matter within the province of the jury. *Retina Assn. of Cleveland v. Smith*, 11th Dist. No. 2002-T-0170, 2003-Ohio-7188, citing  *Weidner v. Blazic*, 98 Ohio App.3d 321, 334, 648 N.E.2d 565 (12th Dist.1994).  Therefore, to prevail on a motion for a new trial based on the jury's assessment of damages, the moving party must demonstrate that the verdict was the result of jury passion or prejudice and that it was so disproportionate in amount as to shock reasonable sensibilities. *Id.*

{¶45} In the instant case, the jury awarded each plaintiff the additional $5,000 to cover the loss of miscellaneous household items that had not been previously itemized. Under the circumstances, where you have lost all your personal belongings and invariably

do not remember certain items until much later, $5,000 is hardly a sum that would shock reasonable sensibilities. Nonetheless, Village Green and FCRM contend the trial court erred in allowing the additional amount.

{¶46} A reviewing court generally will not reverse a trial court's decision regarding its determination of damages absent an abuse of discretion. *Kaufman v. Byers*, 159 Ohio App.3d 238, 2004-Ohio-6346, 823 N.E.2d 530 (11th Dist.), citing *Williams v. Kondziela*, 11th Dist. No. 2002-L-190, 2004-Ohio-2077, citing *Roberts v. United States Fid. & Guar. Co.*, 75 Ohio St.3d 630, 634, 1996-Ohio-101, 665 N.E.2d 664 (1996).

{¶47} Here, we find no evidence that the trial court exhibited an unreasonable, arbitrary, or unconscionable attitude in allowing the additional $5,000 per plaintiff to stand. *Blakemore, supra.* Accordingly, we overrule the seventh assigned error.

## Punitive Damages

{¶48} In the eighth assigned error, Village Green argues the trial court erred by including the issue of punitive damages in the trial.

{¶49} The decision whether to award punitive damages is within the trial court's discretion and, absent an abuse of discretion, the court's ruling will be upheld. *Kemp v. Kemp*, 161 Ohio App.3d 671, 2005-Ohio-3120, 831 N.E.2d 1038 (5th Dist.). Ohio law provides that an award of punitive damages is available only on a finding of actual malice. *Berge v. Columbus Community Cable Access*, 136 Ohio App.3d 281, 316, 736 N.E.2d 517 (10th Dist.1999).

**{¶50}** The "actual malice" necessary for purposes of an award of punitive damages has been defined as "'(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm.'" *Id.*, quoting *Preston v. Murty*, 32 Ohio St.3d 334, 512 N.E.2d 1174 (1987), at syllabus.

**{¶51}** As discussed throughout, the testimony presented at trial established that Village Green consciously ignored the severe state of disrepair of Building 8, despite being presented with glaring evidence. Village Green totally disregarded the rights and safety of its tenants. The tenants had a litany of electrical and water-related complaints that remained unaddressed.

**{¶52}** As such, Village Green's inaction was sufficient to support a finding of malice to justify awarding punitive damages. Consequently, the trial court did not err in allowing the claim for punitive damages to be submitted to the jury. Accordingly, we overrule the eighth assigned error.

### Punitive Damages and Manifest Weight of the Evidence

**{¶53}** In the ninth assigned error, Village Green argues the award of punitive damages was against the manifest weight of the evidence.

**{¶54}** Punitive damages are intended to deter conduct resulting from a mental state that is so callous in its disregard for the rights and safety of others that society deems it intolerable. *Gold Craft Co. v. Egbert's Constr. & Remodeling, L.L.C.*, 10th Dist. No. 09AP-448, 2010-Ohio-3741, citing *Ward v. Hengle*, 124 Ohio App.3d 396, 405, 706

N.E.2d 392 (9th Dist.1997), quoting *Calmes v. Goodyear Tire & Rubber Co.*, 61 Ohio St.3d 470, 473, 575 N.E.2d 416 (1991). A party seeking punitive damages has the burden of proving by clear and convincing evidence that it is entitled to them. *Cabe v. Lunich*, 70 Ohio St.3d 598, 601, 1994-Ohio-4, 640 N.E.2d 159.

{¶55} As discussed in the preceding assigned error, the issue of punitive damages was properly allowed to go to the jury. As previously stated, Village Green totally disregarded the rights and safety of its tenants by failing to address the electrical and water infiltration issues that were brought to their attention through tenants' complaints, previous employees, the city inspector, and the 2004 fire in Building 3.

{¶56} We conclude, the plaintiffs carried their burden of proving by clear and convincing evidence that they were entitled to punitive damages. Accordingly, we overrule the ninth assigned error.

## Punitive Damages and Cap

In the tenth assigned error, Village Green argues the trial court erred when it failed to cap the award of punitive damages. Specifically, Village Green argues that R.C. 2315.21 required the trial court to limit the punitive damages award to an amount that was two times the compensatory damages.

{¶57} The recovery and determination of punitive damage awards is addressed in R.C. 2315.21 and states in pertinent part as follow:

> **"(A) As used in this section: (1) "Tort action" means a civil action for damages for injury or loss to person or property. "Tort action" includes a product liability claim for damages for injury or loss to person or property that is subject to sections 2307.71 to 2307.80 of the Revised**

**Code, but does not include a civil action for damages for a breach of contract or another agreement between persons."**

{¶58}   Initially, we note, a plain reading of the statute reveals that the Ohio General Assembly specifically exempted civil actions for damages in contract when it stated the following: "but does not include a civil action for damages for breach of contract or another agreement between the parties."   In construing a statute, a court's paramount concern is the legislative intent in enacting the statute.  *Rice v. CertainTeed Corp.*, 84 Ohio St.3d 417, 1999-Ohio-361, 704 N.E.2d 1217.   To this end, we must first look to the statutory language and the "purpose to be accomplished." *Id*.   In assessing the language employed by the General Assembly, the court must take words at their usual, normal, or customary meaning.   Most important, it is the court's duty to "give effect to the words used and to refrain from inserting words not used." *Id*.

{¶59} Because Landlord-Tenant agreements are contractual in nature and injurious conduct arising out of the contract is not a tort action, as defined above, but "another agreement between the parties," we agree with the trial court and hold as a matter of law that this action is not subject to R.C. 2315.21.   The trial court specifically invoked this provision when it denied Village Green's motion to invoke R.C. 2315.21 and cap the punitive damages awarded.

{¶60} In the instant case, plaintiffs sued Village Green for violating the statutory duties imposed under R.C. 5321.04, Ohio's Landlord-Tenant Act.   The jury found that Village Green, the landlord, breached its duties imposed by the statute and as such breached the rental agreement between the parties.   Of note, the only relationship between

Village Green and the individual plaintiffs is that borne out in the rental agreement — specifically, Village Green's promise to fulfill the duties imposed by R.C. 5321.04(A) and the plaintiffs-tenants' duty to, but not limited to, pay the rent on time. As such, said rental agreement is a "* * * contract or another agreement between persons," as defined above.

{¶61} As previously discussed at length in the first and fifth assigned errors, the jury found that Village Green breached the duty created by Section 5321.04 by failing to keep the premises in a fit and habitable condition, failing to keep all common areas of the premises in a safe and sanitary condition, and failing to maintain in good and safe working order and condition all electrical fixtures required to be supplied by them. The jury further found that Village Green demonstrated a reckless disregard for the rights and safety of these tenants, the plaintiffs herein, and awarded punitive damages in accordance with that finding. Tr. 2564-2565.

{¶62} We are mindful that punitive damages are generally not recoverable in a breach of contract action. *Mabry-Wright v. Zlotnik*, 165 Ohio App.3d 1, 2005-Ohio-5619, 844 N.E.2d 858 (3d Dist.), citing *Digital & Analog Design Corp. v. N. Supply Co.*, 44 Ohio St.3d 36, 540 N.E.2d 1358 (1989). However, punitive damages are recoverable in a civil action alleging a breach of contract where the conduct constituting the breach is also a tort for which punitive damages are recoverable. *Unifirst Corp. v. Yusa Corp.*, 12th Dist. No. CA2002-08-014, 2003-Ohio-4463. Here, Village Green breached the contractual agreement by negligently maintaining Building 8.

{¶63} We also find that the trial court's reliance on *Kramer Consulting, Inc. v. McCarthy,* S.D. Ohio No. C2-02-116, 2006 U.S. Dist. LEXIS 12857 (Mar. 8, 2006), was not misplaced. In *Kramer*, the district court held that the definition of "tort action" outlined in R.C. 2315.21 did not apply to R.C. 1701.59, which governed the breach of fiduciary claim at issue.

{¶64} In addition, we remain reliant on our determination in *Luri v. Republic Servs.*, 193 Ohio App.3d 682, 2011-Ohio-2389, 953 N.E.2d 859 (8th Dist.), *rev'd on other grounds*, 132 Ohio St.3d 316, 2012-Ohio-2914, 971 N.E.2d 944, that R.C. 2315.21 applies to retaliatory discharge actions brought under R.C. Chapter 4112, and that the trial court was required to apply its provisions if appropriately asked. *Id.* Unlike *Luri*, in the present action, it is Village Green's noncompliance with the Landlord-Tenant Act and the duties that arise from the rental agreement that formed the basis of plaintiffs's negligence action. In *Luri*, there was no semblance of "another agreement between the parties." As such, R.C. 2315.21 does not apply to the punitive damages recovered in the instant case.

{¶65} We conclude that in enacting R.C. 2315.21, the General Assembly was mindful that when parties agree in writing to a code of conduct, the legislature will not adjust or interfere in the parties' agreement. As such, when Village Green, the landlord, agreed to certain defined conduct, imposed by R.C. 5321.04(A), and plaintiffs-tenants agreed, among other things, to pay their rents on time, the intent of the legislature is not to interfere with the parties' contracts nor bring their agreement under the purview of R.C. 2315.21.

**{¶66}** Unlike an action where the parties have no agreement, but instead, the legal relationship is defined solely by the tortuous conduct of the wrongdoer, such as in *Luri*, then R.C. 2315.21 would be applicable to cap a punitive damages award. Under the circumstances, the trial court did not err when it denied Village Green's request to cap the punitive damages award. Accordingly, we overrule the tenth assigned error.

### Attorney Fees

**{¶67}** In the eleventh assigned error, Village Green argues the trial court abused its discretion in the amount of attorney fees it awarded.

**{¶68}** Initially, we note, attorney fees may be awarded as an element of compensatory damages where the jury finds that punitive damages are warranted. *See, e.g.*, *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 1994-Ohio-461, 644 N.E.2d 397.

**{¶69}** In the preceding assigned error, we concluded that the trial court did not err by refusing to limit the punitive damages award to twice the amount of the compensatory damages. The record reveals that plaintiffs' counsel was operating under a contingent fee basis. Specifically, the contingent fee was 40 percent of the amount recovered. The trial court awarded plaintiffs' attorney $1,040,000 in fees or 40 percent of the approximately $2,600,000 that plaintiffs received in compensatory and punitive damages.

**{¶70}** The record reveals that plaintiffs' counsel submitted an unchallenged lodestar calculation to justify the fees. The United States Supreme Court has prescribed the "lodestar" method for calculating reasonable attorney fees, which requires a multiplication of the "number of hours reasonably expended on the litigation times a reasonable hourly

rate." *See Blanchard v. Bergeron*, 489 U.S. 87, 94, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989), quoting *Blum v. Stenson*, 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). The lodestar is strongly presumed to yield a "reasonable" fee. *See Burlington v. Dague*, 505 U.S. 557, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992).

{¶71} "Reasonable fees" are to be calculated according to the prevailing market rates in the relevant community, taking into consideration the experience, skill, and reputation of the attorney. *See Blum*, 465 U.S. at 895.

> **"To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence — in addition to the attorney's own affidavits — that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id*. at 896."**

{¶72} In the instant case, the trial court was mindful that the lawsuit was filed in 2008, involved extensive investigation and discovery, and involved a 10-day jury trial followed by significant post-verdict motions. The trial court also heard testimony that Village Green sent plaintiffs' attorney 42 disorganized banker boxes of construction documents, maintenance records, and public records that had to be sifted through by the firm's paralegal. Further, the trial court considered that plaintiffs' counsel undertook the case on a contingent fee basis, expending time and resources, with no guarantee of success.

{¶73} Based on the aforementioned, we conclude that the trial court did not err in the amount of attorney fees awarded. Accordingly, we overrule the eleventh assigned error.

**{¶74}** Judgment affirmed.

It is ordered that appellees recover from appellants their costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., and
SEAN C. GALLAGHER, J., CONCUR

## APPENDIX

Assignments of Error

I. The Trial court erred in denying defendants' motion for directed verdict with respect to plaintiffs' claim for negligent maintenance.

II. The judgment against each defendants with respect to negligent maintenance was contrary to the manifest weight of the evidence.

III. The trial court erred in allowing the jury to consider evidence relating to the 2004 fire in Building 3.

IV. The trial court erred in instructing the jury with respect to plaintiffs' negligent maintenance claim.

V. The trial court erred in denying Village Green of Beachwood's motion for directed verdict with respect to plaintiffs' claim for negligent construction of Building 8.

VI. The trial court erred in instructing the jury that defendant Village Green of Beachwood was strictly liable for any negligence in the construction of Building 8.

VII. The trial court erred in allowing seven plaintiffs to each recover $5000 more than the amount of damages that they testified to at trial.

VIII. The trial court erred in allowing plaintiffs' claim for punitive damages to go to the jury.

IX. The judgment against defendant Village Green of Beachwood for punitive damages was contrary to the manifest weight of the evidence.

X. The trial court erred in refusing to "cap" the award of punitive damages as required by R.C. 2315.21(D)(2)(a).

XI. The trial court erred in its determination of the amount of attorney fees to be awarded to plaintiffs.