[Cite as *Anzalaco v. Graber*, 2012-Ohio-2057.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 96761 and 96787**

# WILLIAM ANZALACO

PLAINTIFF-APPELLANT

and

# [MICHAEL LEE, INTERVENOR
CROSS-CLAIM DEFENDANT-APPELLANT]

vs.

# KATHERINE M. GRABER, ET AL.

DEFENDANTS-APPELLEES

## JUDGMENT:
## AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-735502

**BEFORE:** Kilbane, J., Stewart, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** May 10, 2012

**ATTORNEYS FOR APPELLANTS**

**For William Anzalaco**

Eric T. Deighton
William T. Rini
Carlisle, McNellie, Rini, Kramer & Elric
24755 Chagrin Boulevard
Suite 200
Cleveland, Ohio 44122

**For Michael Lee**

Jack P. Mills, Jr.
John J. Wargo, Jr.
Wargo & Wargo
30 Park Drive
P.O. Box 332
Berea, Ohio 44017

**ATTORNEYS FOR APPELLEES**

Donald P. McFadden
Monica E. Russell
McFadden & Freeburg Co., LPA
1370 Ontario Street - Suite 600
Cleveland, Ohio 44113-1726

MARY EILEEN KILBANE, J.:

{¶1}   In these consolidated appeals, intervenor cross-claim defendant-appellant, Michael Lee, challenges the order of the trial court that awarded summary judgment to defendants Katherine Graber ("Katherine") and Steve M. Graber ("Steve")  (collectively referred to as "the Grabers") in Lee's action for specific performance of a real estate purchase agreement.  Plaintiff-appellant, William Anzalaco, appeals from the order of the trial court that awarded summary judgment to the Grabers in Anzalaco's action for breach of a secondary contract to purchase the same parcel.  For the reasons set forth below, we affirm both orders.

{¶2} On July 14, 2010, the Grabers, represented by Joseph Keller ("Keller") of Howard Hanna, entered into a purchase agreement with Lee for the sale of their property located at 14599 Bennett Road, in North Royalton for $325,000.   Under the terms of this agreement, Lee was entitled to obtain a general inspection and radon and mold inspections of the property.   Within three days after completion of such inspections,

BUYER [Lee] shall elect one of the following:

(A) Remove the inspection contingency and accept the property in its "AS IS" present physical condition.  If the property is accepted in its "AS IS" present physical condition, then BUYER agrees to sign an *Amendment/Removal of Contingency*.  (Emphasis added.)

(B) Accept the property subject to SELLER agreeing to have specific material defects, that were either previously disclosed in writing by the SELLER or identified in a written inspection report, repaired by a qualified contractor in a professional manner at SELLER's expense; BUYER agrees to provide SELLER with a copy of all inspection reports and to sign an *Amendment to Purchase Agreement* removing the inspection contingency and identifying those specific material defects which are to be repaired. SELLER and BUYER shall have three (3) days from SELLER's receipt of BUYER's written request and copies of inspection reports to agree in writing which material defect(s), if any, shall be corrected by the SELLER at SELLER's expense. If BUYER and SELLER do not agree in writing within those three (3) days, then this AGREEMENT shall be null and void, and SELLER and BUYER agree to sign a mutual release, whereupon the earnest money shall be returned to the BUYER. * * *. (Emphasis added.)

(C) Terminate this Agreement if BUYER's written inspection report(s) or any other source(s) identify material defects NOT previously disclosed in writing by SELLER. If BUYER elects to terminate, BUYER agrees to provide a copy of the written inspection report(s) to SELLER and both parties agree to promptly sign a mutual release, whereupon the earnest money shall be returned to BUYER.

{¶3} The record further discloses that on July 9, 2010, after Lee had the property inspected, Lee invoked option (B). On that date, Lee's realtor sent the Grabers an email in which he identified eight items that he wanted the Grabers to repair or remove. The Grabers refused to make any of the claimed repairs, and on July 21, 2010, Lee presented a counterproposal seeking a $10,000 reduction in the purchase price. According to Katherine, she and her husband refused to reduce the price of the home and determined that by operation of provision (B) of the purchase agreement, the contract was null and void.

**{¶4}** On July 21, 2010, the Grabers entered into a purchase agreement with Anzalaco. Both the Grabers and Anzalaco were represented by Keller. In relevant part, this agreement provided as follows:

> This _X_ is _____ is not a secondary offer. This secondary offer, if applicable, shall become a primary contract upon BUYER's receipt of a signed copy of the release of the primary contract on or before 7-23-10 (Date). BUYER shall have the right to terminate this secondary offer at any time prior to BUYER's receipt of said copy of the release of the primary contract by delivering written notice to the SELLER or SELLER's agent. Upon the receipt of the release of the primary contract, BUYER shall deposit earnest money within four (4) days and BUYER and SELLER agree to sign an addendum listing the date for loan application, loan approval, deposit of funds and documents, title transfer and possession.
>
> * * *
>
> [I]f a defect in title appears, SELLER shall have thirty (30) days after notice from BUYER to remove such defect and, if unable to do so, BUYER may either (1) accept title subject to such defect without any reduction in the purchase price or (2) terminate this Agreement, in which case neither BUYER, SELLER[,] nor any REALTOR(S) shall have any further liability to each other, and both BUYER and SELLER agree to sign a mutual release, whereupon the earnest money shall be returned to BUYER.

**{¶5}** On July 22, 2010, the Grabers executed a mutual release and sent it to Lee for his signature. Lee did not execute the release of his purchase agreement with the Grabers. Instead, on July 23, 2010, Lee executed an Amendment to Offer to Purchase and Removal of Contingency, in which he waived his right to a general inspection.

{¶6} Anzalaco deposited earnest money and the purchase price into escrow, and the Grabers deposited an executed warranty deed for the property. However, the prior purchase agreement with Lee was subsequently deemed a cloud upon the title, and the title company for the transaction refused to issue title insurance without "taking exception to the case."

{¶7} Steve Graber died on August 3, 2010, and Katherine did not enter into a purchase agreement with Lee. On August 25, 2010, Lee's counsel sent Katherine a proposed complaint for specific performance of his purchase agreement.

{¶8} On August 31, 2010, Anzalaco filed suit for breach of contract and specific performance against Katherine, and also set forth claims against Howard Hanna Real Estate Services Co. ("Howard Hanna") and real estate agent Joseph A. Keller. Anzalaco alleged that Katherine breached the purchase agreement, and that Howard Hanna and Keller committed fraud and breached their fiduciary duties in this matter.

{¶9} On October 7, 2010, the trial court granted Lee's motion to intervene in the action as a defendant. He filed a counterclaim against Anzalaco and cross-claim against Katherine, seeking specific performance of the July 14, 2010 purchase agreement. Lee asserted that Katherine had breached the contract with him, and that his claim to the property was superior to that of Anzalaco.

{¶10} Lee moved for summary judgment and maintained that option (B) of the inspection clause did not apply because this provision required both parties to "agree" to

the repairs. According to Lee, he waived the contingency, and by operation of option (A), the purchase agreement remained in effect.

{¶11} Katherine moved for summary judgment and maintained that the purchase agreement with Lee terminated under option (B) upon her refusal to make the requested repairs or to lower the purchase price.

{¶12} Anzalaco also moved for summary judgment and maintained that Lee's purchase agreement was terminated under option (B) and that his [Anzalaco's] secondary offer is now binding. He further alleged that Keller, Howard Hanna, and the Grabers negligently and fraudulently misrepresented that the prior contract had terminated and was void, that all contingencies had been removed, and that a written release was not necessary.

{¶13} The trial court entered summary judgment against Lee and against Anzalaco on their claims for breach of contract and specific performance. With regard to Lee, the court concluded that there were no genuine issues of material fact and that, following his inspection, Lee "clearly elected option (B)," that this option did not, as Lee asserted, require the Grabers to "agree in principle to undertake repairs," and that the agreement became null and void after Lee and the Grabers could not agree about the repairs.

{¶14} With regard to Anzalaco, the trial court concluded that by the express terms of the secondary offer provision, in the absence of a signed release from Lee, Anzalaco's purchase agreement never became a valid and binding purchase agreement. The trial court further concluded that Anzalaco could not show, through parole evidence, that

Katherine, Howard Hanna, or Keller informed him that there was no need for a signed release from Lee because the agreement was unambiguous. The court did not rule on those causes of action, but certified under Civ.R. 54(B) that there was no just cause for delay. Lee and Anzalaco both appeal herein.

{¶15} A reviewing court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241; *Mitnaul v. Fairmount Presbyterian Church*, 149 Ohio App.3d 769, 2002-Ohio-5833, 778 N.E.2d 1093 (8th Dist.2002). Therefore, this court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the nonmoving party and resolving any doubt in favor of the nonmoving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12, 467 N.E.2d 1378 (6th Dist.1983).

{¶16} Pursuant to Civ.R. 56(C), summary judgment is proper if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

{¶17} Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), the nonmoving party must set forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449, 1996-Ohio-211, 663 N.E.2d 639.

**{¶18}** Generally, the elements for a breach of contract are that a plaintiff must demonstrate by a preponderance of the evidence that (1) a contract existed, (2) the plaintiff fulfilled his obligations, (3) the defendant failed to fulfill his obligations, and (4) damages resulted from this failure. *Lawrence v. Lorain Cty. Community College*, 127 Ohio App.3d 546, 549, 713 N.E.2d 478 (9th Dist.1998).

**{¶19}** The primary objective in contract interpretation is to give effect to the intent of the parties as expressed in the language they chose to employ in their agreement. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53, 544 N.E.2d 920 (1989). The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement. *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 132, 509 N.E.2d 411 (1987), paragraph one of the syllabus. Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument. *Foster Wheeler Enviresponse v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361, 1997-Ohio-202, 678 N.E.2d 519.

**{¶20}** In general, a contract to purchase real estate may be enforced by specific performance. *Ferraro v. Cristiano*, 2d Dist. No. 23146, 2009-Ohio-4789, ¶ 72. This equitable remedy is available when the promissor's failure to perform constitutes a breach of contract and money damages or other legal remedies will not afford the promisee adequate relief. *Id.*

**{¶21}** Where, however, the formation of a contract is dependent upon a condition precedent, such condition must be performed before the agreement becomes effective. *Militiev v. McGee*, 8th Dist. No. 94779, 2010-Ohio-6481, ¶ 27. A condition precedent calls for the happening of some event or the performance of some act after the terms of the contract have been agreed on before the contract shall be binding on the parties. *Id*. In connection with this, we note that a secondary offer generally requires the fulfillment of various stated conditions before becoming an enforceable contract. *Sutton v. Bloom*, 710 F.2d 1188 (6th Cir.1983).

**{¶22}** Applying the foregoing to this matter, we conclude that the trial court properly determined that there were no genuine issues of material fact and that Katherine is entitled to judgment as a matter of law on intervener Lee's claims for breach of contract and specific performance. By application of the ordinary meaning of the common words appearing in the parties' July 14, 2010 purchase agreement, the Buyer was to make an election from options (A), (B), or (C) following the inspection. It is undisputed that Lee did not remove the inspection contingency and accept the property in its "AS IS" present physical condition under option (A), and did not immediately terminate the agreement under option (C). Rather, the record establishes that Lee elected option (B). As explained in the trial court's opinion:

> On July 16, 2010, Mr. Lee had a home inspection completed. After the inspection, Mr. Lee elected to choose option B. On July 19, 2010, Mr. Lee's realtor sent an email to Ms. Graber's realtor listing eight items that Mr. Lee wanted her to repair. Ms. Graber did not agree to fix any of the items listed by Mr. Lee. In response to Ms. Graber's refusal, Mr. Lee

demanded a $10,000 price reduction, which was refused by Ms. Graber as well.

**{¶23}** Therefore, under the plain language of this provision, "If BUYER and SELLER do not agree in writing within those three (3) days, then this AGREEMENT shall be null and void, and SELLER and BUYER agree to sign a mutual release, whereupon the earnest money shall be returned to the BUYER." This provision operated as a condition precedent to the formation of an agreement once the buyer elected this option.

**{¶24}** Moreover, the clear language of this provision does not support Lee's claim that option (B) required the seller to agree in principle to undertake repairs in order for this option to be exercised. Rather, the Buyer was simply permitted, at his discretion, to elect this option.

**{¶25}** Although the plain language of option (B) states that, "If BUYER and SELLER do not agree in writing within those three (3) days, then this AGREEMENT shall be null and void," Lee insists that this provision is not effective until the buyer and seller agree in principal that it is necessary to repair specific material defects, and then negotiate the repair of those defects. In rejecting this argument below, the trial court correctly analyzed the issue as follows:

> There is nothing in the agreement that required Ms. Graber to agree in principal to undertake repairs before actually receiving a list of repairs from Mr. Lee. It would not make any sense to have a seller agree to do repairs, then receive the actual list of repairs from the buyer in order to negotiate what repairs would be done at the seller's expense.

* * *  Rather, [the language in option (B) pertaining to an agreement regarding the repair of defects] spells out the method in which the buyer and seller would negotiate as to what repairs the seller would undertake at her expense.  The agreement became null and void once the buyer and seller could not agree on the repairs, which is what happened here.

{¶26} Lee also insists that the purchase agreement did not terminate through the July 9, 2010 exercise of option (B) because the contract gave him  until July 24, 2010 to exercise the inspection provision, and that prior to that deadline, on July 23, 2010, he invoked option (A), and accepted the property "as is."  Again, as cogently stated by the trial court, "There is no mechanism under the language of the agreement to allow Mr. Lee to elect a different option once option B became an impossibility."  Rather, the July 24, 2010 date is simply the last date for the buyer to obtain an inspection and does not extend the contract once the buyer does so.

{¶27} Lee also complains that the Grabers acted in bad faith in connection with his purchase agreement by promptly entering into the contract with Anzalaco.  The record clearly establishes, however, that the Grabers gave Anzalaco a secondary offer that would only mature into a primary contract upon the release of Lee's purchase agreement.  This claim is without merit.

{¶28} From the foregoing, the trial court properly determined that there were no genuine issues of material fact and that Katherine is entitled to judgment as a matter of law, by application of the ordinary meaning of the common words appearing in the

agreement. The refusal of the Grabers to make the repairs identified by Lee resulted in the failure of a condition precedent that prevented the parties from entering into an enforceable agreement. Lee's claim for breach of contract lacked merit as a matter of law, and absent an enforceable agreement, Lee's claim for specific performance was likewise without merit.

{¶29} Further, with regard to Anzalaco's claims for breach of contract and specific performance, the trial court properly determined that there were no genuine issues of material fact and that Katherine is entitled to judgment as a matter of law. The trial court explained:

> Because Mr. Lee refused to sign the release [of the primary purchase agreement], the buyer [sic] could not get a signed copy of that release as required under the time frame established by the Anzalaco agreement. Pursuant to this language, the secondary contract could not become the primary contract without the release of the Lee agreement being signed by all parties to that agreement on or before July 23, 2010. As such, there is no valid contract between the parties, and Ms. Graber is entitled to judgment as a matter of law[.]

{¶30} We concur with this analysis. By application of the ordinary meaning of the common words appearing in the parties' July 21, 2010 purchase agreement, Anzalaco made a "secondary offer." The undisputed facts demonstrate that Lee did not execute a release of the primary contract, so the secondary offer never became a primary contract upon the failure of that condition precedent.

{¶31} Anzalaco insists, however, that parole evidence is admissible to demonstrate that his offer became a primary offer. He relies upon Katherine's July 26, 2010 affidavit that she prepared "for the purpose of inducing [the title agency] to issue a title insurance

policy or other title evidence" in which she avers that "[t]here are no other contracts, options, or rights to purchase the Property except for the contract being closed."

**{¶32}** As noted by the trial court, however, parole evidence is barred because the terms of "the Anzalaco agreement [are] unambiguous on its face." *See Kelley v. Ferraro*, 188 Ohio App.3d 734, 2010-Ohio-2771, 936 N.E.2d 986, ¶ 28 (8th Dist.). That is, a "secondary offer" generally requires the fulfillment of various stated conditions before becoming an enforceable contract. *Bloom*, 710 F.2d 1188. The parole affidavit does not alter the unambiguous provisions of Anzalaco's purchase agreement that required "BUYER's [Anzalaco's] receipt of a signed copy of the release of the primary contract on or before 7-23-10," in order to convert Anzalaco's secondary offer to a primary contract. Absent that release, Anzalaco's secondary offer did not mature into a primary contract.

**{¶33}** Further, Katherine's ability to deliver clear, marketable title is itself a condition precedent. *See St. Paul's Lutheran Church v. Brooks*, 6th Dist. No. H-07-022, 2008-Ohio-2481 ("[I]f St. Paul's could not fulfill the condition precedent [i.e., clear and marketable title], Lyons had the option to either accept title with the possible reversionary cloud, or negate the purchase agreement."). Under the terms of the parties' agreement, Katherine could not obtain title insurance and Anzalaco had the option to either accept title with the possible reversionary cloud or negate the purchase agreement. Anzalaco offered no evidence that he accepted title subject to that defect as required to proceed with the transaction under the marketable title provision of the agreement. To the

contrary, in his response to Katherine's request for admissions, Anzalaco admitted that he would "not accept a general warranty deed from Katherine M. Graber that takes exception for Michael Lee's claims arising from the purchase agreement he entered into with Katherine and Steve Graber."

**{¶34}** In light of the foregoing, the trial court properly determined that no enforceable contract was created, so Anzalaco's claim for breach of contract was without merit as a matter of law. Absent an enforceable contract, his claim for specific performance was also without merit.

**{¶35}** The trial court's April 14, 2011 order granting summary judgment to Katherine on Lee's cross-claim for breach of contract and specific performance and on Anzalaco's claims for breach of contract and specific performance is affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, JUDGE

MELODY J. STEWART, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR