[Cite as *Zappola v. Rock Capital Sound Corp.*, 2014-Ohio-2261.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100055**

## JOHN ZAPPOLA

PLAINTIFF-APPELLEE

vs.

## ROCK CAPITAL SOUND CORP., ET AL.

DEFENDANTS/COUNTERCLAIM

PLAINTIFFS-APPELLANTS

vs.

## HUGHIE'S AUDIO VISUAL SERVICE, INC.

COUNTERCLAIM DEFENDANT-
APPELLEE

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-09-704138

**BEFORE:** Blackmon, J., Keough, P.J., and Kilbane, J.
**RELEASED AND JOURNALIZED:** May 29, 2014

**ATTORNEYS FOR APPELLANTS**

David A. Campbell
Gregory C. Scheiderer
Vorys, Sater, Seymour and Pease, L.L.P.
2100 One Cleveland Center
1375 East Ninth Street
Cleveland, Ohio 44114

**ATTORNEYS FOR APPELLEES**

James M. Johnson
James M. Johnson Co., L.P.A.
110 Hoyt Block Building
700 West St. Clair Avenue
Cleveland, Ohio 44113

Richard L. Dempsey
Justin D. Gould
Richard L. Dempsey Co., L.P.A.
1350 Euclid Avenue, Suite 1550
Cleveland, Ohio 44115

PATRICIA ANN BLACKMON, J.:

{¶1} Appellant, Rock Capital Sound Corporation ("Rock Capital"), appeals the jury verdict in favor of plaintiff-appellee John Zappola ("Zappola") on his claim for breach of contract, and the jury verdict in favor of Zappola on Rock Capital's counterclaim, as well as the trial court's decision granting third-party defendant Hughie's Audio Visual Service, Inc.'s ("Hughie's") motion for directed verdict on Rock Capital's counterclaim and third-party complaint. Rock Capital assigns the following errors for our review:

> I. The trial court erred in granting counterclaim defendant Hughie's Audio Visual Service, Inc.'s ("HAVS") motion in limine to exclude defendant/counterclaim plaintiff Rock Capital Sound Corporation's ("RCSC") evidence of damages.

> II. The trial court erred in granting HAVS' renewed motion for directed verdict and in dismissing HAVS from the case.

> III. The trial court erred in entering the verdict in favor of plaintiff John Zappola ("Zappola") and against RCSC for breach of contract when interrogatories were inconsistent with the verdict.

> IV. The jury's award of $40,000 in damages on Zappola's breach of contract claim is not supported by competent and credible evidence.

> V. The trial court erred in denying RCSC's motion for new trial regarding the directed verdict in favor of third-party defendant HAVS against RCSC's counterclaim.

> VI. The trial court erred in denying RCSC's motion for judgment notwithstanding the verdict and, in the alternative, motion for new trial regarding the verdict in favor of Zappola's breach of contract claim.

{¶2} Having reviewed the record and pertinent law, we affirm the jury verdicts and the trial court's decision. The apposite facts follow.

{¶3} On August 21, 2009, after 17 years of service as an account executive, Zappola resigned from Rock Capital, an audio visual service provider. Upon resigning from Rock Capital, Zappola commenced employment with Hughie's, another audio visual service provider.

{¶4} On September 16, 2009, Zappola filed a suit against Rock Capital for unpaid commissions from contracts he had procured for the company. Rock Capital counterclaimed alleging that Zappola breached his contract by failing to give the requisite two-week notice before resigning, that Zappola misappropriated trade secrets, and that he tortiously interfered with contracts and business relationships.

{¶5} Rock Capital also filed a third-party complaint against Hughie's, under the theory of respondeat superior, alleging that the company was liable for Zappola's actions while employed with Hughie's Audio Visual. Specifically, Rock Capital alleged that Hughie's was also liable for misappropriation of trade secret and tortious interference of contract and business relationships.

{¶6} On April 14, 2010, Zappola amended his complaint to assert an ERISA claim against Rock Capital. Specifically, Zappola alleged that since leaving the employ of Rock Capital, he has been denied access to the funds in his 401(K) plan, in violation of state and federal laws. Zappola also alleged that Rock Capital may have converted the

funds in his 401(K) to its own use. Rock Capital removed the case to federal court, the claims were disposed of, and the case was later remanded to the state court.

{¶7} Upon remand from the federal court, the trial court gave the parties 120 days to complete discovery. Both Zappola and Hughie's issued interrogatories and requests for production of documents to Rock Capital, that largely went unanswered. Specifically, Rock Capital did not provide any responses regarding damages suffered as a result of the alleged conduct of Zappola and Hughie's.

{¶8} As a result, in May and June 2012, both Zappola and Hughie's filed respective motions to compel Rock Capital to fully respond to the interrogatories and requests for production of documents, or in the alternative, to dismiss the counterclaim and third-party complaint. Thereafter, Rock Capital provided a partial response to the interrogatories and provided nothing to support its claimed damages.

{¶9} Subsequently, on June 8, 2012, Zappola renewed his motion to compel Rock Capital to respond to discovery and to dismiss the counterclaim and third-party complaint, or in the alternative requested that the trial court grant the motion in limine. On that same date, Hughie's filed a supplemental motion to compel Rock Capital to provide meaningful answers to interrogatory numbers 4, 5, 6, 8, and 11 through 29, and requests for production of documents 1, 2, 3, 6 through 11,13, and 14.

{¶10} On December 12, 2012, Zappola filed a renewed motion to dismiss Rock Capital's counterclaim on the basis that despite successive motions to compel discovery, his discovery requests remained unanswered. On that same date, Hughie's joined

Zappola's motion on the basis that its own discovery requests were still largely unanswered. Following a pretrial conducted also on December 12, 2012, the trial court held the motions in abeyance and advised the parties to work towards resolving the discovery dispute.

{¶11} On March 6, 2013, both Zappola and Hughie's renewed their respective motions to dismiss the counterclaim and the third-party complaint, or in the alternative, motion in limine. In their motions, both parties cited Rock Capital's repeated failure to cooperate in discovery. On March 11, 2013, both Zappola and Hughie's moved the court for a motion in limine for an order prohibiting Rock Capital from introducing any evidence of financial harm or damage to the alleged claims.

{¶12} On April 1, 2013, on the eve of trial, the trial court denied Zappola and Hughie's respective motions to dismiss Rock Capital's counterclaim and third-party complaint. The trial court issued a journal entry indicating that the arguments that were set forth in the respective motions may be presented as a basis to bar evidence at trial. Following the entry, due to a previously scheduled trial on its docket, the trial court transferred the case to a visiting judge.

{¶13} On the morning of the trial, the parties met in the chambers of the visiting judge and put forth their respective arguments on whether Rock Capital's evidence of damages should be barred because of its failure to respond to discovery. Hughie's renewed its motion in limine that Rock Capital be barred from introducing any and all

evidence of financial damages. The visiting judge reserved its ruling and the trial commenced.

**{¶14}** After Rock Capital's opening statement, Hughie's moved for directed verdict on all claims because of Rock Capital's failure to properly allege damages. The visiting judge overruled Hughie's motion, and extensive discussions took place regarding Rock Capital's failure to produce documents evincing damages.

**{¶15}** During the discussion, Rock Capital indicated that it had given approximately 2,000 pages of commission documents to Zappola. Hughie's indicated that it had never received those documents that Rock Capital was now attempting to use in its case against them and objected to their admissibility. After hearing from the parties, the visiting judge granted Hughie's motion in limine to exclude the documents.

**{¶16}** Following the ruling, Hughie's moved for a directed verdict on Rock Capital's third-party complaint on the grounds that the case could not be proven without the element of financial damages. The visiting judge granted Hughie's motion for directed verdict and Rock Capital's case against Zappola proceeded on all claims.

**{¶17}** The jury ruled in favor of Zappola on all counts of Rock Capital's counterclaim. The jury found that Rock Capital breached the contract with Zappola and awarded him $40,000. In response to interrogatories, the jury also found that Rock Capital was not damaged by Zappola's failure to give a two-week notice upon resigning. In addition, the visiting judge awarded Zappola $6,400 in prejudgment interest.

**{¶18}** Thereafter, Rock Capital filed post-trial motions based on the directed verdict in favor of Hughie's, and for new trial and judgment notwithstanding the verdict rendered in favor of Zappola. The visiting judge denied all of Rock Capital's post-trial motions. Rock Capital now appeals.

### Final Appealable Order

**{¶19}** Before we address the merits of the instant matter, we note that at the time of the appeal, there was a pending motion for attorney fees for frivolous conduct, Zappola's claim for punitive damages that had been bifurcated for trial and was arguably still pending, as well as a pending motion for prejudgment interest. In light of the above, we ordered the parties to brief the question whether the decision was final and appealable.

**{¶20}** Appellate jurisdiction is limited to the review of final orders. R.C. 2505.03. Final orders include those orders that affect a substantial right and in effect determine an action and prevent a judgment. R.C. 2505.02(B)(1). A "substantial right" for purposes of R.C. 2505.02 is "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." R.C. 2505.02(A)(1).

**{¶21}** Regarding the motion for attorney fees for frivolous conduct, we note that sanctions for frivolous conduct are generally considered to be collateral to the underlying action. *See, e.g.*, *Linetsky v. Dejohon*, 8th Dist. Cuyahoga No. 98370, 2012-Ohio-6140. Thus, a motion for sanctions does not impede the finality of the judgment. *See also Crenshaw v. Integrity Realty Group, L.L.C.*, 8th Dist. Cuyahoga No. 100031,

2013-Ohio-5593, ¶ 3 (the trial court stayed consideration of R.C. 2323.51 motion pending our decision on the merits).

**{¶22}** Regarding Zappola's claim for punitive damages, Rock Capital argues that the claim is moot, because the basis for the jury's verdict in Zappola's favor was that Rock Capital breached the contract. We agree.

**{¶23}** Punitive damages are generally not recoverable in a breach of contract action. *Sivit v. Village Green of Beachwood*, 8th Dist. Cuyahoga No. 98401, 2013-Ohio-103, citing *Mabry-Wright v. Zlotnik,* 165 Ohio App.3d 1, 2005-Ohio- 5619, 844 N.E.2d 858 (3d Dist.), citing *Digital & Analog Design Corp. v. N. Supply Co.,* 44 Ohio St.3d 36, 540 N.E.2d 1358 (1989). As such, this claim does not deprive us of jurisdiction.

**{¶24}** Finally, regarding the motion for prejudgment interest, the record reveals that the trial court granted the motion on May 29, 2013, prior to the filing of the instant appeal. However, Zappola was ordered to submit a calculation of the amount of interest due, but the amount was not determined before the appeal was filed. The parties subsequently agreed upon the amount.

**{¶25}** In general, a pending motion for prejudgment interest renders a judgment non-final. *Miller v. First Internatl. Fidelity & Trust Bldg., Ltd.,* 113 Ohio St.3d 474, 2007-Ohio-2457, 866 N.E.2d 1059. However, because the trial court granted the motion before this appeal was filed, all that remained was the determination of the amount.

**{¶26}** The calculation of the amount is a ministerial task that does not preclude finality of the judgment. *Morgan Stanley Credit Corp. v. Fillinger*, 8th Dist. Cuyahoga No. 98197, 2012-Ohio-4295, citing *Third Wing Inc. v. Columbia Cas. Co.*, 8th Dist. Cuyahoga No. 96450, 2011-Ohio-4827. As such, the judgment is final, and we proceed to address the merits of the instant appeal.

## Motion in Limine

**{¶27}** In the first assigned error, Rock Capital argues the trial court erred when it granted Hughie's motion in limine to exclude Rock Capital's evidence of damages.

**{¶28}** A motion in limine is essentially a request to limit or exclude evidence or testimony at trial. *Sokolovic v. Hamilton*, 195 Ohio App.3d 406, 2011-Ohio-4638, 960 N.E.2d 510 (8th Dist.). Therefore, the standard of review on appeal of the grant of a motion in limine is whether the trial court abused its discretion. *Id.*, citing *Thakur v. Health Care & Retirement Corp. of Am.*, 6th Dist. Lucas No. L-08-1377, 2009-Ohio-2765. *See also Estate of Johnson v. Randall Smith, Inc.,* 135 Ohio St.3d 440, 2013-Ohio-1507, 989 N.E.2d 35, ¶ 22, citing *Illinois Controls, Inc. v. Langham*, 70 Ohio St.3d 512, 526, 1994-Ohio-99, 639 N.E.2d 771.

**{¶29}** Abuse of discretion means more than an error of law or of judgment and implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). Consequently, absent such evidence, this court must affirm the decision of the trial court.

{¶30} In the instant case, specifically Rock Capital argues that evidence of damages against Hughie's should have been admitted at trial. However, the record reveals that evidence of damages against Hughie's were never provided during discovery that spanned almost three years, despite multiple motions to compel being filed by both Hughie's and Zappola.

{¶31} As previously noted, on March 6, 2013, both Zappola and Hughie's renewed their respective motions to dismiss Rock Capital's counterclaim and the third-party complaint, or in the alternative motion in limine. In their respective motions, both parties cited Rock Capital's repeated failure to cooperate in discovery and moved the court for a motion in limine for an order prohibiting Rock Capital from introducing any evidence of financial harm or damage to the alleged claims.

{¶32} Also, as previously noted, the trial court's April 1, 2013 journal entry, while denying the respective motions of Hughie's and Zappola, stated that the arguments set forth by Zappola and Hughie's may be presented as a basis to bar evidence at trial. As such, Rock Capital was on notice that the matter would be revisited at trial. In addition, because the matter was transferred to a visiting judge, Rock Capital was on notice that the visiting judge had authority, not only to revisit the matter, but to also rule on the matter.

{¶33} Thus, when Rock Capital sought to introduce the documents against Hughie's, after extended discussions, the trial court granted Hughie's motion in limine to exclude the documents, because it determined that Rock Capital had provided no

discovery to Hughie's on that matter. Tr. 232-233. The trial court also granted Hughie's a continuing objection to any and all questions that Rock Capital should attempt to ask witnesses regarding damages against Hughie's.

{¶34} Pursuant to Civ.R. 37(B)(2)(b), a court may preclude a party from introducing designated matters in evidence if that party fails to obey an order to provide or permit discovery. *Homme v. Homme*, 12th Dist. Butler No. CA2010-04-093, 2010-Ohio-6080, citing *Bailey v. Bailey*, 12th Dist. Clermont No. CA2004-02-017, 2004-Ohio-6930. After a thorough review of the record, we find that the trial court did not abuse its discretion in excluding the documents.

{¶35} Nonetheless, Rock Capital argues that the visiting judge did not have discretion to rule on or disturb pretrial rulings. However, we have previously held that visiting judges may, in their discretion, defer to the rulings of the original judge, but are also not prohibited from exercising discretion to revisit prior rulings. *O'Connor v. Fairview Hosp.*, 8th Dist. Cuyahoga No. 98721, 2013-Ohio-1794, citing *Schultz v. Duffy*, 8th Dist. Cuyahoga No. 93215, 2010-Ohio-1750.

{¶36} Moreover, even if the visiting judge was not authorized to rule on the motion in limine and subsequently erred by excluding the documents Rock Capital claims supported damages occasioned by Hughie's, they were not prejudiced. Rock Capital's claims against Hughie's were all brought pursuant to the doctrine of respondeat superior because Zappola was employed by Hughie's when he allegedly engaged in tortious interference of contract and misappropriated trade secrets.

{¶37} However, in response to interrogatories, the jury found that Zappola did not interfere with Rock Capital's contracts or business relationships and did not misappropriate trade secrets. Thus, the outcome of the trial would have been the same had the documents been admitted against Hughie's.

{¶38} Thus, based on the facts of the instant case, the trial court properly granted Hughie's motion in limine to exclude all documents relating to damages. Accordingly, we overrule the first assigned error.

## Motion for Directed Verdict

{¶39} In the second assigned error, Rock Capital argues the trial court erred when it granted Hughie's motion for directed verdict and dismissed them from the case.

{¶40} We employ a de novo standard of review in evaluating the grant or denial of a motion for directed verdict. *United States Bank v. Amir*, 8th Dist. Cuyahoga No. 97438, 2012-Ohio-2772, citing *Groob v. KeyBank*, 108 Ohio St.3d 348, 2006-Ohio-1189, 843 N.E.2d 1170, ¶ 14. A motion for directed verdict is properly granted if "the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." Civ.R. 50(A)(4).

{¶41} In the instant case, Rock Capital brought two claims, pursuant to respondeat superior, against Hughie's; one for tortious interference of contract and business relationships and the other for misappropriation of trade secrets.

**{¶42}** In regards to the first claim, the elements essential to recovery for a tortious interference with a business relationship are: (1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom. *Presser v. RCP Mayfield, L.L.C.*, 8th Dist. Cuyahoga No. 92073, 2009-Ohio-3380 The torts of interference with business relationships and contract rights generally occur when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another. *Id*.

**{¶43}** In regard to the second claim, effective July 20, 1994, the General Assembly enacted the Ohio Uniform Trade Secrets Act, R.C. 1333.61 through 1333.69, which provides for civil remedies, i.e., injunctive relief and damages, for the misappropriation of trade secrets. *Berardi's Fresh Roast, Inc. v. PMD Enters., Inc.,* 8th Dist. Cuyahoga No. 93920, 2010-Ohio-5124, citing *State ex rel. Besser v. Ohio State Univ.*, 87 Ohio St.3d 535, 538-539, 2000-Ohio-475, 721 N.E.2d 1044, citing *State ex rel. The Plain Dealer v. Ohio Dept. of Ins.*, 80 Ohio St.3d 513, 523, 1997-Ohio-75, 687 N.E.2d 661.

**{¶44}** Damages resulting from the misappropriation of trade secrets are generally calculated in the following ways:

Damages may include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss. In lieu of damages measured by any

other methods, the damages caused by misappropriation may be measured by imposition of liability for a reasonable royalty that is equitable under the circumstances considering the loss to the complainant, the benefit to the misappropriator, or both, for a misappropriator's unauthorized disclosure or use of a trade secret.

R.C. 1333.63(A).

{¶45} A review of the essential elements of Rock Capital's two causes of actions against Hughie's reveals that it cannot establish at least one pivotal element of the claims. Specifically, Rock Capital cannot establish that it was financially damaged by any alleged actions on the part of Hughie's. As discussed in the first assigned error, the trial court granted Hughie's motion in limine to bar Rock Capital from introducing any and all documents purporting to be evidence of damages against Hughie's.

{¶46} As a result, Rock Capital was unable to satisfy an essential element of both causes of action. Consequently, both claims against Hughie's fail. As such, the trial court properly granted Hughie's motion for directed verdict. Accordingly, we overrule the second assigned error.

**Breach of Contract**

{¶47} In the third and fourth assigned errors, Rock Capital argues the trial court erred when it entered judgment in favor of Zappola on the breach of contract claim and the jury erred when it awarded Zappola $40,000 based on the verdict.

**{¶48}** Generally, the elements for a breach of contract are that a plaintiff must demonstrate by a preponderance of the evidence that (1) a contract existed, (2) the plaintiff fulfilled his obligations, (3) the defendant failed to fulfill his obligations, and (4) damages resulted from this failure. *Anzalaco v. Graber*, 2012-Ohio-2057, 970 N.E.2d 1143 (8th Dist.), citing *Lawrence v. Lorain Cty. Community College*, 127 Ohio App.3d 546, 549, 713 N.E.2d 478 (9th Dist.1998).

**{¶49}** At trial, Zappola testified that he worked for Rock Capital for 17 years, wearing many hats, but primarily as an account executive procuring business to provide stage lighting at events. Zappola testified that his income was based purely on commission with a draw that operated like an advance against the commission.

**{¶50}** Zappola testified that under the employment agreement signed at the commencement of his employment, he was paid 30% on the net profits Rock Capital earned on the events he was responsible for contracting. Zappola testified that in the latter part of 2007, Rock Capital changed the commission structure, wherein Zappola would make 10% on the events that Rock Capital earned at least 40%. Zappola testified that under the revised agreement, he made considerably less money.

**{¶51}** Zappola testified that along with the new commission structure, which by itself reduced his income, Rock Capital would assign incorrect invoices to inflate the expenses related to various events he had booked. As a result of these invoices being incorrectly assigned, it made it appear that Rock Capital earned less than 40% on the event, that in turn, caused Zappola to be ineligible for a commission.

**{¶52}** At trial, while reviewing Rock Capital's 2008 and 2009 Commission Structure Chart in conjunction with corresponding events' manifest, Zappola illustrated specific instances where incorrect expense invoices were attributed to events he had procured. Zappola testified that had the incorrect invoices not been attributed to those events, he would have been eligible for a commission, because Rock Capital indeed earned at least 40% on the events. Zappola testified, that by his calculations, Rock Capital owed him approximately $42,600 in commissions for events he procured.

**{¶53}** Zappola testified that in the early part of 2009, Rock Capital suspended direct deposit of commissions and began issuing paper checks. Zappola testified that in several instances after receiving his paycheck, he was advised not to cash it for a few days. Zappola testified that he complied, encouraged his coworkers to be patient, but because he was 52 years old, with two children, he was very concerned about his future.

**{¶54}** Zappola testified that in August 2009, he decided to go to work for Hughie's. Zappola admitted that he did not give the two weeks notice that he realized later was part of his employment agreement. Zappola testified that upon notifying Rock Capital of his intentions, Gary Jurist, the company's owner, asked him to reconsider and offered to apply for a credit card loan, so that he could pay Zappola $50,000.

**{¶55}** In response, Zappola indicated that he would think about the offer over the weekend. Zappola testified that the following week, he began work with Hughie's and letters were sent out to customers in Hughie's database announcing that he was now with the company.

**{¶56}** Zappola addressed Rock Capital's allegations that he pursued its clients and utilized trade secrets that he memorized when he left for Hughie's. Zappola testified that there are two ways that events are procured; primarily through bidding on the events or by quoting. Zappola explained that each year, a company had to re-bid or re-quote the event that they operated the year before. Zappola explained that some years, a company might contract with Rock Capital and then next year contract with Hughie's, while some years, a company might hire both to do the event.

**{¶57}** Zappola testified that information about pricing was widely known throughout the industry and to the public at large. Zappola testified that there was nothing secret about Rock Capital's or Hughie's customer or pricing information. Three former employees of Rock Capital corroborated Zappola's testimony about the lack of a trade secret regarding customer lists and pricing.

**{¶58}** Rock Capital's owner, Gary Jurist, as well as its chief financial officer, Gary Steeberger, testified that their calculations of Zappola's commissions differed significantly. According to Jurist and Steeberger, in 2008, Rock Capital paid Zappola $21,896.85 in excess of his draw and in 2009, Zappola fell short of his draw by $31,244.66. By their calculations, after considering commissions that were carried over from 2008 to 2009, they contend that Rock Capital overpaid Zappola by approximately $3,070.

**{¶59}** Here, we conclude that Zappola presented credible evidence to prevail on his claim of breach of contract. There is no dispute that a contract existed. There is also

no dispute that Zappola, during the relevant time period, went out and procured events that Rock Capital subsequently provided the necessary services. In addition, although Rock Capital testified that their calculations differ significantly from Zappola's, after reviewing the aforementioned commission statements along with the record of the corresponding events that Zappola used to illustrate the discrepancy, we conclude that Zappola established that Rock Capital failed to pay the correct amount of commissions.

{¶60} A party claiming breach of contract has the duty to prove its damages by a preponderance of the evidence. *Hawkins v. Green*, 8th Dist. Cuyahoga No. 96205, 2011-Ohio-5175, ¶ 11. This, Zappola has done. Once the plaintiff has made its case, the trial court has discretion to award damages, and this court will not reverse its decision absent an abuse of discretion. *Roberts v. United States Fid. & Guar. Co.*, 75 Ohio St.3d 630, 634, 1996-Ohio-101, 665 N.E.2d 664. Nonetheless, Rock Capital argues the Zappola breached the contract by not giving two weeks notice before resigning, therefore he cannot recover. However, as noted previously, the jury found that Zappola's lack of a two week notice was inconsequential and immaterial.

{¶61} We conclude Zappola performed the core duties of the employment agreement, that is procuring profitable business for Rock Capital. In turn, Rock Capital was duty bound to pay Zappola the correct commission. This they failed to do. As such, the jury verdict and attendant award of $40,000 was proper. Accordingly, we overrule the third and fourth assigned errors.

## Motion for Judgment Notwithstanding the Verdict or New Trial

**{¶62}** In the fifth and sixth assigned errors, Rock Capital argues the trial court erred when it denied its motions for judgment notwithstanding the verdict or in the alternative a new trial.

**{¶63}** We employ a de novo standard of review in evaluating a trial court's ruling on a motion for directed verdict or judgment notwithstanding the verdict. *Fisher v. Beazer E., Inc.*, 8th Dist. Cuyahoga No. 99662, 2013-Ohio-5251, citing *Whitaker v. Kear*, 123 Ohio App.3d 413, 422, 704 N.E.2d 317 (4th Dist.1997); *Kanjuka v. MetroHealth Med. Ctr.*, 151 Ohio App.3d 183, 2002-Ohio-6803, 783 N.E.2d 920 (8th Dist.).

**{¶64}** In *Posin v. A.B.C. Motor Court Hotel, Inc.*, 45 Ohio St.2d 271, 275, 344 N.E.2d 334 (1976), the Ohio Supreme Court stated:

The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict. The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions.

*McNees v. Cincinnati St. Ry. Co.*, 152 Ohio St. 269, 89 N.E.2d 138 (1949); *Ayers v. Woodard*, 166 Ohio St. 138, 140 N.E.2d 401 (1957); Civ.R. 50(A) and (B).

{¶65} We review a trial court's judgment on a Civ.R. 59 motion for a new trial under the abuse of discretion standard. *Rybak v. Main Sail, LLC*, 8th Dist. Cuyahoga No. 96899, 2012-Ohio-2298, citing *McWreath v. Ross*, 179 Ohio App.3d 227, 2008-Ohio-5855, 901 N.E.2d 289 (11th Dist.).

{¶66} Civ.R. 59(A)(6) provides  that a trial court may order a new trial if it is apparent that the verdict is not sustained by the manifest weight of the evidence.

{¶67} In determining whether a new trial is warranted, the trial court

> "must weigh the evidence and pass upon the credibility of the witnesses, not in the substantially unlimited sense that such weight and credibility are passed on originally by the jury but in the more restricted sense of whether it appears to the trial court that manifest injustice has been done and that the verdict is against the manifest weight of the evidence."

*Id.*, citing *Rohde v. Farmer*, 23 Ohio St.2d 82, 262 N.E.2d 685 (1970), paragraph three of the syllabus.

{¶68} In the case, as against Hughie's, the stated grounds for Rock Capital's motion for judgment notwithstanding the verdict or in the alternative a new trial is the allegation that evidence of damage was admitted against Hughie's without objections. However, as previously noted, the visiting judge granted a continuing objection to any and all questions regarding damages against Hughie's.

{¶69} Rock Capital also alleged that the trial court misapplied the doctrine of respondeat superior.  However, as previously discussed, in response to interrogatories,

the jury found that Zappola did not interfere with Rock Capital's contracts or business relationships and did not misappropriate trade secrets. Thus, Rock Capital's failure to prevail against Zappola, whose alleged actions is the predicate or grounds for its claims against Hughie's under the doctrine of respondeat superior, renders their present assertion without merit.

{¶70} As against Zappola, the basis for Rock Capital's motion is that the verdict is inconsistent because Zappola breached the contract by failing to give a two-week notice before resigning. However, as previously discussed, the jury found that to be inconsequential.

{¶71} Consequently, in accordance with the foregoing, there is substantial evidence from which the jurors could reasonably conclude that Rock Capital breached the contract to pay Zappola the proper commissions. Thus, the visiting judge properly denied the motion for judgment notwithstanding the jury's verdict.

{¶72} In addition, in this matter, we find no abuse of discretion. The record reveals that the verdict was not against the manifest weight of the evidence and did not result in a manifest injustice. The visiting judge acted within her discretion in denying Rock Capital's motion for new trial. Accordingly, we overrule the fifth and sixth assigned errors.

{¶73} Judgment affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
MARY EILEEN KILBANE, J., CONCUR